## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: | **Jointly Administered** |
| | |
| EPIC Companies Midwest, LLC, | Bankruptcy No. 24-30281 |
| EPIC Companies Midwest 2023, LLC, | Bankruptcy No. 24-30282 |
| EPIC Employee, LLC, | Bankruptcy No. 24-30283 |
| EOLA Capital, LLC, and | Bankruptcy No. 24-30284 |
| EC West Fargo, LLC, | Bankruptcy No. 24-30285 |
| | |
| Debtors. | Chapter 11 |

EPIC Companies Midwest, LLC,
EOLA Capital, LLC,

      Plaintiffs,

v.                                      Adversary No. _____

HI West Acres, LLC,
f/k/a EPIC Hospitality, LLC,

      Defendant.

## COMPLAINT

      Plaintiffs, EPIC Companies Midwest, LLC and EOLA Capital, LLC (collectively, the "Plaintiffs"), for their Complaint against Defendant, HI West Acres, LLC f/k/a EPIC Hospitality, LLC (the "Defendant"), state and allege as follows:

### PARTIES

      1.    EPIC Companies Midwest, LLC ("EPIC Midwest") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around

November 19, 2018. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.[1]

2.      EOLA Capital, LLC ("EOLA") is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around February 8, 2022. Its principal place of business was located at 400 10th Street SE, Minot, North Dakota, 58701.

3.      The Defendant is a limited liability company organized and existing under the laws of the State of North Dakota and was formed on or around August 4, 2022 under the name EPIC Hospitality, LLC. On July 1, 2024, the Defendant changed its name to HI West Acres, LLC. Its principal place of business is located at 230 Horizon Drive, Suite 102, Verona, Wisconsin 53593.

4.      The Defendant owes funds to the Plaintiffs pursuant to certain loan transactions.

## JURISDICTION AND VENUE

5.      The Plaintiffs filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 8, 2024 (the "Petition Date"). The bankruptcy cases are currently pending before this Court.

6.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

7.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

8.      The Plaintiffs consent to the entry of final orders and judgment by this Court pursuant to Fed. R. Bankr. P. 7008.

9.      This Complaint is filed under Fed. R. Bankr. P. 7001.

---

[1] As of October 10, 2024, all the Plaintiffs' principal addresses changed to 900 Long Lake Road, Suite 180, c/o Lighthouse Management Group, Inc., New Brighton, Minnesota 55112-6455.

10.     The Plaintiffs are properly joined in this adversary proceeding under Fed. R. Civ. P. 20(a)(1), as incorporated by Fed. R. Bankr. P. 7020, as their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and the claims involve common questions of law or fact.

## FACTUAL BACKGROUND

### I.     PLAINTIFFS' GENERAL STRUCTURE AND PURPOSE.

11.     The Plaintiffs are part of a series of affiliated companies known collectively as "EPIC Companies."

12.     EPIC Companies generally consist of the Plaintiffs, certain real estate holding entities, including the Defendant, certain service-providing companies (i.e., property management and construction), and other companies involved in hospitality, restaurant, entertainment, and similar industries. All of them are affiliated with certain individuals who structured, organized, and sponsored this business activity, including Todd Berning.

13.     Each of the Plaintiffs were formed for the alleged purpose of providing funds to various real estate development projects throughout the State of North Dakota, each of which was developed and managed by subsidiaries of EPIC Companies (the "Project Companies").

14.     On information and belief, each of the Project Companies is a "single purpose entity," meaning that each holds one real estate development project.

15.     Based on records reviewed to date, each of the Project Companies appears to have a different ownership group.

16.     Many of the Project Companies have borrowed money from banks for the construction of the real estate projects at issue, and those banks generally have senior secured positions on the real estate owned by each of the Project Companies.

17.     The Plaintiffs typically provided funds in the form of "subordinated debt" to each of the Project Companies (the "Sub Debt"). The Sub Debt would be junior to any bank debt but superior to the equity holders in each of the Project Companies.

18.     With funds received by the Plaintiffs from certain individual investors, the Plaintiffs made loans to the Project Companies.

19.     Most loans by the Plaintiffs to the Project Companies are documented by promissory notes but, on information and belief, some may be reflected solely in accounting records.

20.     The majority of the Sub Debt required the Project Companies to make monthly installment payments to the Plaintiffs and a final balloon payment on the applicable maturity date.

21.     On information and belief, the Defendant is one of the Project Companies. It has an interest in real estate located at 3801 13th Avenue South, 3803 13th Avenue South, 1040 40th Street South, and 1120 40th Street South, Fargo, North Dakota 58103.

## II.     TRANSFERS TO THE DEFENDANT FROM EPIC MIDWEST.

22.     On January 1, 2023, Debtor EPIC Midwest and the Defendant entered into a promissory note with the following balance as of November 30, 2024:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EPIC Midwest | 1/1/23 | $785,000 | $0.00 | $94,200 | $26,166.67 | $32,446.67 | $843,613.33 |
| | | | | | | | **$843,613.33** |

(the "EPIC Midwest Note").

23.     The EPIC Midwest Note matures on January 1, 2026. Interest accrues at a rate of 8.0% and the standard late fee is $0.04 per $1.00.

24.     Pursuant to the EPIC Midwest Note, EPIC Midwest offered to loan $785,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The EPIC Midwest Note is unsecured.

25.     Between December 27, 2022 and January 20, 2023, and pursuant to the EPIC Midwest Note, EPIC Midwest transferred $785,000[2] to the Defendant (the "EPIC Midwest Transfer").

26.     Under the terms of the EPIC Midwest Note, the Defendant was required to make monthly payments to EPIC Midwest in the form of interest.

27.     The failure to make payments to EPIC Midwest as and when such payments were due constitutes a default under the terms of the EPIC Midwest Note.

28.     Between January 1, 2023 and June 30, 2024, the Defendant paid EPIC Midwest a total of $94,200 in interest.

29.     After June 30, 2024, the Defendant ceased making payments to EPIC Midwest and defaulted under the EPIC Midwest Note.

30.     Therefore, all amounts owed to EPIC Midwest by the Defendant became immediately due and payable.

31.     As of November 30, 2024, the Defendant owes EPIC Midwest a total of at least $843,613.33, which consists of $785,000 of principal, $26,166.66 of interest, and $32,446.67 of late fees, with interest and fees continuing to accrue.

32.     Before, during, and after the period of December 27, 2022 to January 20, 2023, EPIC Midwest had creditors, including various individual investors.

---

[2] EPIC Midwest provided $1 million to the Defendant on December 27, 2022, of which $225,000 was almost immediately paid back by the Defendant. Then, on January 10, 2023, EPIC Midwest provided an additional $10,000.

33.     On June 11, 2024, EPIC Midwest's board of directors appointed Lighthouse Management Group, Inc. ("Lighthouse") as its Chief Restructuring Officer.

34.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 27, 2022 and January 20, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

35.     Based on the financial records identified above and reviewed by Lighthouse, between December 27, 2022 and January 20, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was insolvent or became insolvent thereafter.

## III.    TRANSFERS TO THE DEFENDANT FROM EOLA.

36.     On October 1, 2022, Debtor EOLA and the Defendant entered into a promissory note with the following balance as of November 30, 2024:

| Lender | Date | Original Principal | Principal Paid | Interest Paid | Interest Past Due | Late Fees | Total Amount Due |
|---|---|---|---|---|---|---|---|
| EOLA | 10/1/22 | $275,000 | $225,000 | $31,343.75 | $1,770.83 | $2,070.83 | $53,841.67 |
| | | | | | | | **$53,841.67** |

(the "EOLA Note," and together with the EPIC Midwest Note, the "Notes").

37.     The EOLA Note matures on October 1, 2025. Interest accrues at a rate of 8.5% and the standard late fee is $0.04 per $1.00.

38.     Pursuant to the EOLA Note, EOLA offered to loan a total of $275,000 to the Defendant under certain terms and conditions and the Defendant accepted that offer. The EOLA Note is unsecured.

39.     On January 4, 2023, and pursuant to the EOLA Note, EOLA transferred a total of $275,000 to the Defendant (the "EOLA Transfer").

40.     Under the terms of the EOLA Note, the Defendant was required to make monthly payments to EOLA in the form of interest.

41.     The failure to make payments to EOLA as and when such payments were due constitutes a default under the terms of the EOLA Note.

42.     Between October 1, 2022 and June 30, 2024, the Defendant paid EOLA $225,000 in principal and $31,343.75 in interest, for a total of $256,343.75.

43.     After June 30, 2024, the Defendant ceased making payments to EOLA and defaulted under the EOLA Note.

44.     Therefore, all amounts owed to EOLA by the Defendant became immediately due and payable.

45.     As of November 30, 2024, the Defendant owes EOLA a total of at least $53,841.67, which consists of $50,000 of principal, $1,770.83 of interest, and $2,070.83 of late fees, with interest and fees continuing to accrue.

46.     Before, during, and after the period of October 1, 2022 to January 4, 2023, EOLA had creditors, including various individual investors.

47.     On June 11, 2024, EOLA's board of directors appointed Lighthouse as its Chief Restructuring Officer.

48. Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2022 and January 4, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

49. Based on the financial records identified above and reviewed by Lighthouse, between October 1, 2022 and January 1, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA was insolvent or became insolvent thereafter.

**IV.     PRIOR DEMAND FOR AMOUNTS OWED.**

50. On November 5, 2024, the Plaintiffs caused a demand letter to be sent on their behalf to the Defendant demanding the amounts owed to the Plaintiffs under the Notes.

51. As of the date of this Complaint, the Defendant has failed to pay the Plaintiffs.

52. The Plaintiffs continue to be harmed by the Defendant's failure to pay the outstanding amounts owed by the Defendant to the Plaintiffs.

53. The Plaintiffs are still in the process of tracing all of the transfers to the various Project Companies. To the extent the Defendant further transferred funds to other Project Companies, the Plaintiffs expressly reserve the right to pursue additional claims against the Defendant and any subsequent transferees, including, but not limited to, claims under Chapter 5 of the Bankruptcy Code.

## COUNT I
## BREACH OF CONTRACT
### (EPIC Midwest v. Defendant)

54.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

55.     On January 1, 2023, EPIC Midwest and the Defendant entered into the EPIC Midwest Note.

56.     Under the terms of the EPIC Midwest Note, EPIC Midwest agreed to provide the Defendant a total of $785,000; in exchange, the Defendant agreed to make regular monthly payments to EPIC Midwest.

57.     Between December 27, 2022 and January 20, 2023, and pursuant to the EPIC Midwest Note, EPIC Midwest transferred a total of $785,000 to the Defendant

58.     On or around June 30, 2024, the Defendant ceased making payments to EPIC Midwest as required by the EPIC Midwest Note.

59.     The Defendant's failure to make monthly payments to EPIC Midwest constitutes a breach of the EPIC Midwest Note.

60.     Due to the Defendant's breach of the EPIC Midwest Note, EPIC Midwest has been damaged in the amount of at least $843,613.33, plus interest and other fees and costs allowed by law and the EPIC Midwest Note.

## COUNT II
## BREACH OF CONTRACT
### (EOLA v. Defendant)

61.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

62.     On October 1, 2022, EOLA and the Defendant entered into the EOLA Note.

63.    Under the terms of the EOLA Note, EOLA agreed to provide the Defendant a total of $275,000; in exchange, the Defendant agreed to make regular monthly payments to EOLA.

64.    On January 4, 2023, and pursuant to the EOLA Note, EOLA transferred a total of $275,000 to the Defendant.

65.    On or around June 30, 2024, the Defendant ceased making payments to EOLA as required by the EOLA Note.

66.    The Defendant's failure to make monthly payments to EOLA constitutes a breach of the EOLA Note.

67.    Due to the Defendant's breach of the EOLA Note, EOLA has been damaged in the amount of at least $53,841.67, plus interest and other fees and costs allowed by law and the EOLA Note.

### COUNT III
### UNJUST ENRICHMENT
### (EPIC Midwest v. Defendant)

68.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

69.    EPIC Midwest conferred a benefit to the Defendant by providing $785,000 to the Defendant.

70.    The Defendant knowingly accepted the $785,000 from EPIC Midwest.

71.    As the Defendant did not make the agreed upon monthly payments to EPIC Midwest, the Defendant is not entitled to the benefit of the value of the $785,000 from EPIC Midwest.

72.    Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

73.     The amount of benefit wrongfully retained by the Defendant is in the amount of at least $785,000, plus interest and other fees and costs allowed by law.

**COUNT IV**
**UNJUST ENRICHMENT**
**(EOLA v. Defendant)**

74.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

75.     EOLA conferred a benefit to the Defendant by providing $275,000 to the Defendant.

76.     The Defendant knowingly accepted the $275,000 from EOLA.

77.     As the Defendant did not make the agreed upon monthly payments to EOLA, and only paid $225,000 in principal to the EOLA, the Defendant is not entitled to the benefit of the value of the $275,000 from EOLA.

78.     Under the circumstances, it would be unjust and inequitable to permit the Defendant to retain the benefit from its actions.

79.     The amount of benefit wrongfully retained by the Defendant is in the amount of at least $50,000, plus interest and other fees and costs allowed by law.

**COUNT V**
**ACCOUNT STATED**
**(EPIC Midwest v. Defendant)**

80.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

81.     EPIC Midwest demanded payment of the Defendant's account with EPIC Midwest.

82.     The Defendant did not substantively respond to the demand letter or dispute any amounts.

83.     The Defendant did not pay the amounts due and owing to EPIC Midwest.

84.     As a result, EPIC Midwest has been damaged in the amount of at least $843,613.33, plus interest and other fees and costs allowed by law.

## COUNT VI
## ACCOUNT STATED
### (EOLA v. Defendant)

85.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

86.     EOLA demanded payment of the Defendant's account with EOLA.

87.     The Defendant did not substantively respond to the demand letter or dispute any amounts.

88.     The Defendant did not pay the amounts due and owing to EOLA.

89.     As a result, EOLA has been damaged in the amount of at least $53,841.67, plus interest and other fees and costs allowed by law.

## COUNT VII
## PROMISSORY ESTOPPEL
### (EPIC Midwest v. Defendant)

90.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

91.     The Defendant promised it would make regular monthly payments to EPIC Midwest.

92.     In reasonable reliance on those promises, EPIC Midwest loaned a total of $785,000 to the Defendant.

93.     EPIC Midwest was harmed by its reasonable reliance on the Defendant's promises, as EPIC Midwest loaned $785,000 to the Defendant and was not repaid.

94.     As a result, EPIC Midwest has been damaged in the amount of at least $843,613.33, plus interest and other fees and costs allowed by law.

### COUNT VIII
### PROMISSORY ESTOPPEL
### (EOLA v. Defendant)

95.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

96.     The Defendant promised it would make regular monthly payments to EOLA.

97.     In reasonable reliance on those promises, EOLA loaned a total of $275,000 to the Defendant.

98.     EOLA was harmed by its reasonable reliance on the Defendant's promises, as EOLA loaned $275,000 to the Defendant and was not repaid.

99.     As a result, EOLA been damaged in the amount of at least $53,841.67, plus interest and other fees and costs allowed by law.

### COUNT IX
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### 11 U.S.C. §§ 548(a)(1)(B), 550(a)
### (EPIC Midwest v. Defendant)

100.     The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

101.     EPIC Midwest entered into the EPIC Midwest Note with the Defendant and made the EPIC Midwest Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and only paid $94,200 to EPIC Midwest despite receiving $785,000 from EPIC Midwest.

102.     Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that

between December 27, 2022 and January 20, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small.

103.    On information and belief, between December 27, 2022 and January 20, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

104.    Based on the financial records identified above and reviewed by Lighthouse, between December 27, 2022 and January 20, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was insolvent or became insolvent as a result of the EPIC Midwest Note and the EPIC Midwest Transfer.

105.    The Defendant was the initial transferee of the EPIC Midwest Note and the EPIC Midwest Transfer.

106.    Based on the foregoing, the EPIC Midwest Note and the EPIC Midwest Transfer, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

107.    Pursuant to 11 U.S.C. § 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT X**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest v. Defendant)**

108.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

109.    EPIC Midwest entered into the EPIC Midwest Note with the Defendant and made the EPIC Midwest Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $94,200 to EPIC Midwest despite receiving $785,000 from EPIC Midwest.

110.    Before, during, and after the period of December 27, 2022 to January 20, 2023, EPIC Midwest had creditors, including various individual investors.

111.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 27, 2022 and January 20, 2023, and at all relevant times between entry into the EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was engaged or was about to engage in a business or a transaction for which the remaining assets of EPIC Midwest were unreasonably small in relation to the business or transaction or EPIC Midwest intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

112.    The Defendant was the first transferee of the EPIC Midwest Note and the EPIC Midwest Transfer.

113.    Based on the foregoing, the EPIC Midwest Note and the EPIC Midwest Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

114.    Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XI**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and**
**550(a)**
**(EPIC Midwest v. Defendant)**

115.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

116.    EPIC Midwest entered into the EPIC Midwest Note with the Defendant and made the EPIC Midwest Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EPIC Midwest with a security interest in any collateral and eventually only paid $94,200 to EPIC Midwest despite receiving $785,000 from EPIC Midwest.

117.    Before and during the period of December 27, 2022 to January 20, 2023, EPIC Midwest had creditors, including various individual investors.

118.    Lighthouse has reviewed EPIC Midwest's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between December 27, 2022 and January 20, 2023, and at all relevant times between entry into the

EPIC Midwest Note and the EPIC Midwest Transfer to the Defendant, EPIC Midwest was insolvent or became insolvent thereafter.

119.    The Defendant was the first transferee of the EPIC Midwest Note and the EPIC Midwest Transfer.

120.    Based on the foregoing, the EPIC Midwest Note and the EPIC Midwest Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

121.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EPIC Midwest may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

**COUNT XII**
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS**
**11 U.S.C. §§ 548(a)(1)(B), 550(a)**
**(EOLA v. Defendant)**

122.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

123.    EOLA entered into the EOLA Note with the Defendant and made the EOLA Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and eventually only paid $256,343.75 to EOLA despite receiving $275,000 from EOLA.

124.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2022 and January 4, 2023, and at all relevant times between entry into the EOLA Note with the Defendant and the EOLA Transfer to the Defendant, EOLA was engaged or was about to

17

engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small.

125.    On information and belief, between October 1, 2022 and January 4, 2023, and at all relevant times between entry into the EOLA Note with the Defendant and the EOLA Transfer to the Defendant, EOLA intended to incur or believed it would incur debts beyond its ability to pay as the debts matured.

126.    Based on the financial records identified above and reviewed by Lighthouse, between October 1, 2022 and January 4, 2023, and at all relevant times between entry into the EOLA Note with the Defendant and the EOLA Transfer to the Defendant, EOLA was insolvent or became insolvent as a result of the note and transfer.

127.    The Defendant was the initial transferee of the EOLA Note and the EOLA Transfer.

128.    Based on the foregoing, the EOLA Note with the Defendant and the EOLA Transfer to the Defendant, all of which occurred within two years before the Petition Date, are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to 11 U.S.C. § 548(a)(1)(B).

129.    Pursuant to 11 U.S.C. § 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

### COUNT XIII
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EOLA v. Defendant)

130.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

131.     EOLA entered into the EOLA Note with the Defendant and made the EOLA Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and eventually only paid $256,343.75 to EOLA despite receiving $275,000 from EOLA.

132.     Before, during, and after the period of October 1, 2022 to January 4, 2023, EOLA had creditors, including various individual investors.

133.     Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2022 and January 4, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA was engaged or was about to engage in a business or a transaction for which the remaining assets of EOLA were unreasonably small in relation to the business or transaction or EOLA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as the debts became due.

134.     The Defendant was the first transferee of the EOLA Note and the EOLA Transfer.

135.     Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

136.     Pursuant to N.D. Cent. Code §§ 13-02.1-04(1)(b), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## COUNT XIV
## AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS/OBLIGATIONS
### N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a)
### (EOLA v. Defendant)

137.    The Plaintiffs restate and reallege the foregoing paragraphs of this Complaint as if set forth fully herein.

138.    EOLA entered into the EOLA Note with the Defendant and made the EOLA Transfer to the Defendant and received less than reasonably equivalent value in exchange. The Defendant did not provide EOLA with a security interest in any collateral and eventually only paid $256,343.75 to EOLA despite receiving $275,000 from EOLA.

139.    Before and during the period of October 1, 2022 to January 4, 2023, EOLA had creditors, including various individual investors.

140.    Lighthouse has reviewed EOLA's general ledger, bank statements, and financial reports from January 2019 through June 2024. These financial records indicate that between October 1, 2022 and January 4, 2023, and at all relevant times between entry into the EOLA Note and the EOLA Transfer to the Defendant, EOLA was insolvent or became insolvent thereafter.

141.    The Defendant was the first transferee of the EOLA Note and the EOLA Transfer.

142.    Based on the foregoing, the EOLA Note and the EOLA Transfer are avoidable, and should be avoided, as fraudulent transfers or obligations pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. § 544(b).

143.    Pursuant to N.D. Cent. Code §§ 13-02.1-05(1), 13-.02.1-07, 13-02.1-08(2) and 11 U.S.C. §§ 544(b) and 550(a), EOLA may recover such fraudulent transfers or obligations from the Defendant in an amount to be determined at trial, plus interest and other fees and costs allowed by law.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the following relief:

A.      Enter judgment in favor of the Plaintiffs on their claims against the Defendant;

B.      Award the Plaintiffs their attorney's fees and costs for pursuing this action as allowed by applicable law and the above-described notes;

C.      Grant such other relief that the Court deems just and equitable.

Dated:  December 18, 2024

*/e/ Steven R. Kinsella*

Michael S. Raum (#05676)
**FREDRIKSON & BYRON, P.A.**
51 Broadway, Suite 400
Fargo, ND  58102-4991
701.237.8200
mraum@fredlaw.com

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice*, MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
612.492.7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR PLAINTIFFS**

## AFFIDAVIT

I, Patrick Finn, am a Partner of Lighthouse Management Group, Inc., the Chief Restructuring Officer for EPIC Companies Midwest, LLC and EOLA Capital, LLC and I declare under penalty of perjury that the facts set forth in the preceding Complaint are true and correct, according to the best of my knowledge, information, and belief.

Dated:  December 12, 2024

Patrick Finn
Partner, Lighthouse Management Group, Inc.
Chief Restructuring Officer for the Plaintiffs